HUMMEL v. STATE OF INDIANA.

[No. 10,645. Filed March 10, 1920.]

1. CRIMINAL LAW.—*Parent and Child.*—*Failure to Provide.*— *Jurisdiction of Offense.*—*Juvenile Court.*—That the mother has taken the children, for the care of whom their father is charged with failure to provide, to Illinois, does not deprive the juvenile court of Indiana of jurisdiction, where the children were for a time, by reason of the failure of defendant to provide, in need while in Indiana, and where, while in Illinois, he provided nothing for them, and where the abode that he maintained for them in Indiana did not constitute a "shelter" within the meaning of Acts 1915 p. 139, §2635c *et seq.* Burns' Supp. 1918. p. 15.

2. CRIMINAL LAW.—*Parent and Child.*—*Failure to Support Child.* — *Construction of Statute.* — *"Shelter."* — The word "shelter" in §2635c Burns' Supp. 1918, Acts 1915 p. 139, §1, means more than simply protection from the weather. It means a home with proper environment, and not a place that will destroy the moral sensibility of the child and train it to immorality and lawlessness. p. 15.

3. MARRIAGE.—*Common-law Marriage.*—*Not Dissoluble by Consent.*—A common-law marriage entered into in 1902 in Illinois and continued until 1919, cannot be cast aside in Indiana by the parties, and the statutory marriage of the husband to another woman is not aided by the consent of the lawful, common-law wife to remain in the household as housekeeper and to care for the children of the common-law marriage. p. 16.

4. CRIMINAL LAW.—Parent and Child.—Neglect of Father to Furnish Necessaries.—Construction of Statute.—"Wilfully."— In a prosecution under §2635c Burns' Supp. 1918, Acts 1915 p. 139, where the facts show a deliberate, perverse design not to furnish his children the shelter to which they were entitled, a father cannot be heard to say that he was always willing to provide for his children, and that therefore his failure to do so was not wilful. p. 17.

5. PARENT AND CHILD.—Support of Child.—Neglect of Duty by Father.—Wife's Representation That Another Will Discharge Duty No Excuse.—A husband and father is under the duty to terminate immoral conditions in his house, and create a shelter under which his children could safely abide, and he has no right to rely on his wife's statement that her father would support her and the children if she would leave her husband. p. 17.

6. CRIMINAL LAW.—Parent and Child.—Support of Child.—Failure to Furnish.—No Demand Necessary.—No demand or request need be made upon a father to supply the needs of his children, where his wife left home, taking his children, because, under the conditions there existing, he could give no sheltering home to his children, and a prosecution may be maintained under §2635c Burns' Supp. 1918, Acts 1915 p. 139, without any such previous request. p. 18.

7. CRIMINAL LAW.—Failure to Support Child.—Appeal.—Claim of Excessive Punishment.—Where the punishment assessed is authorized by the act defining the crime, and where such statute further empowers the trial court to extend clemency in certain cases, such punishment will not be disturbed by the Appellate Court when there is no reason disclosed by the records to doubt that the trial court will properly administer its authority. p. 18.

From Marion Juvenile Court (15,090); Frank J. Lahr, Judge.

Prosecution by the State of Indiana against Ivan F. Hummel. From a judgment of conviction, the defendant appeals. Affirmed.

Alvah J. Rucker, for appellant.

Ele Stansbury, Attorney-General, and A. B. Cronk, for the state.

NICHOLS, C. J.—By this appeal appellant seeks to reverse the judgment of the Marion Juvenile Court, based

upon the following facts certified by the trial court, in the form of a special finding, as required by §1635 Burns 1914, Acts 1907 p. 221: Ivan F. Hummel and Dot Hummel on or about September 28, 1902, started to live together as husband and wife in a hotel in Chicago, Illinois, and lived together in the manner of husband and wife until June 10, 1919; that at no time was a marriage ceremony performed between them ·by any organization or person entitled or sanctioned by law to perform the same; that since September, 1902, the said Dot Hummel, while living with the defendant in the manner aforesaid, gave birth to three children, Waldo, age sixteen, Ivan, age ten, and Andrew, age fourteen months; that the defendant acknowledges himself to be the father of all such children except the youngest; that Ivan F. Hummel supported the said Dot Hummel and all of said children until about April 1, 1919; that between April 1, 1919, and June 10, 1919, the children were at different times in need of food and clothing, which the defendant failed and neglected to give; that since June 10, 1919, and up to the date of trial, the defendant failed and neglected to provide anything whatever for said children; that, at all times during the living together of said parties, the defendant and Dot Hummel held themselves out and represented themselves to the public to be husband and wife; that the defendant has been industrious and has had no trouble except that arising from the facts in this case; that in the month of June, 1919, the defendant married one Grace F. Huls, who had worked in his office as his stenographer; that, before said marriage with Grace F. Huls, the defendant and Dot Hummel agreed that after such marriage they and each of them and the said children should live in the same house, said Dot Hummel to be the housekeeper for all of said parties; that several days after such marriage Dot Hummel became dis-

satisfied with such arrangement and removed herself and three children to Sandwich, Illinois, since which time defendant contributed nothing towards their support or maintenance; that at Sandwich, Illinois, the said Dot Hummel and her three children lived with her father, George L. Havenhill, who looked after their needs during the time aforesaid; that defendant contributed nothing.

It is not necessary to set out the affidavit containing the charge, as the section above referred to expressly provides that the special findings, and not the informal complaint, shall be considered as the basis of the judgment rendered.

By the judgment based on the foregoing facts, appellant was fined in the sum of $500, sentenced to imprisonment in the Marion county jail for 180 days, with an order that he be compelled to work on the public work of Marion county, and that the commissioners pay, for the support of said children, one dollar for each day's work of the appellant.

Appellant's counsel, in an able brief, without defending or condoning the immoralities of his client or of his client's wife, in language which we commend for the respect which it shows for the trial judge, from whom he differs in his interpretation of the law, most earnestly contends that the judgment must be reversed, for the reason that the court has no jurisdiction. It is argued that, since the mother had taken the children for the care of whom appellant is charged with having failed to provide, to Illinois, such failure, if any, was in that state where they were for the time domiciled, and that he is therefore not amenable to the Indiana law. From April 1, 1919, to June 10, 1919, as appears in the facts certified, the children were at different times in need of food and clothing, which appellant failed and neglected to furnish. They were then

in Indiana. From June 10 to the date of the trial appellant failed and neglected to provide anything whatever for such children. During this last period of time they were with their mother at the home of her parents in Illinois. The statute under which appellant is charged made it an offense wilfully to neglect to furnish necessary food, clothing, shelter and medical attention for his children. Acts 1915 p. 139, §2635c et seq. Burns' Supp. 1918. These things he had not furnished from June 10, 1919, for the facts found say that he had furnished nothing during that period. This is not a case of a mother without excuse taking children away from a proper home which the father had provided for them, and refusing to return with them upon request so to do, as in Wheeler v. State (1912), 51 Ind. App. 622, 100 N. E. 25, for in this case no proper home was furnished. Appellant had wholly failed to furnish shelter, food and clothing in Marion county, Indiana, which was the place of his abode. To furnish shelter must be held to mean more than simply protection from the weather. It means a home with proper environment, and not a place where the depravity of the father, along with the vicious immoral conduct of others, will destroy the moral sensibilities of the child, and train it to a life of immorality and lawlessness.

On June 10, 1919, appellant had a wife who was such by a common-law marriage, into which relation they had entered by mutual agreement, in the State of Illinois in the year 1902, and they had ever since held themselves out to the world as husband and wife. This relation they could not cast aside by their own caprice any more than they could cast aside a statutory marriage. The welfare of the state and of society forbids such trifling with the marriage relation. On that day, however, he proceeded to enter into the marriage relation with another, without making any pre-

tense to a legal separation from his lawful wife, and then took his bigamous wife into his home, where she was to reign as queen, while his lawful wife was to serve as housekeeper and in caring for his children. But appellant says that his wife consented to this altruistic arrangement. It does appear by the evidence that she went with them for the license, then to the jewelers to get the ring, before going to the justice of the peace for the marriage, in order, it would seem, that anything that was lacking in the formal consummation of the first marriage might be fully compensated for by the impressive ceremony of the second, and that she then witnessed the sacred nuptials by which the three were made one. As we remember, it was the woman that gave to the man and he did eat, but this case is distinguished from that original authority, for here, after two days the woman "backed up" and repudiated the whole scheme, whether from jealousy or from a quickening of the moral sense we do not need to inquire, as the man only is on trial.

Appellant argues that he was always willing to provide for his children, and that therefore his failure so to do was not wilful, stating that "wilfully," as 4. used in criminal statutes to characterize a forbidden act, means deliberate, perverse design and malice, with set purpose. We cannot imagine a more deliberate, perverse design not to furnish his children the shelter to which they were entitled, and not to surround them with an environment that made it possible for them to grow to true manhood.

Appellant says that he had a right, when, because of his immoral and licentious conduct, his wife's father was willing to support her and the children, if 5. she would leave him, to rely upon her statement that her father would do so. He had no such

right. He had the right and the duty to "clean house" at home and thereby create a shelter under which his children could safely abide, and it does not appear from the evidence that he has done this yet.

He complains that no demand or request had been made of him to supply their needs, but none was required under the circumstances; he knew, when his wife left his home with his children, that it was because his home with his consent had been invaded by another woman, who was there without right, and contrary to law and morality, and that, under such conditions, he could give no sheltering home to his children. Appellant says that, without request for support, he has been unable, after diligent search, to find any precedent in the United States where a case of wilful neglect has been prosecuted under such circumstances. We need no precedent. We have no hesitation in establishing by this case a precedent for Indiana.

Finally, appellant insists that the punishment is so grossly excessive under the facts that the judgment should be reversed for that reason. We cannot agree with appellant's contention. We note that §2 of the act, *supra*, that authorizes the punishment that was assessed against appellant, empowers the trial court, in its discretion, and with the consent of appellant, to extend clemency to him upon conditions therein set forth, and, without in any way presuming to dictate to the trial court as to its future conduct of the case, we have no doubt that, when the court, who has shown discernment in this case, is assured that appellant has put aside his bigamous wife, has become a law-abiding citizen, and has manifested a desire to care for his children in the right way, he will be shown such leniency as the circumstances merit, and as will be conducive to the welfare of the state. The judgment is affirmed.