THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HENRY M. MERZ, Defendant-Appellant.

Second District   Nos. 83—685, 83—805 cons.

Opinion filed March 27, 1984.

G. Joseph Weller, Paul J. Glaser, and Michael F. Braun, all of State Appellate Defender's Office, of Elgin, for appellant.

Theodore Floro, State's Attorney, of Woodstock (Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

While on probation for the offense of unlawful delivery of a controlled substance (Ill. Rev. Stat. 1981, ch. 56½, par. 1401(e)), defendant, Henry M. Merz, was found guilty of residential burglary (Ill. Rev. Stat. 1981, ch. 38, par. 19—3), theft in excess of $300 (Ill. Rev. Stat. 1981, ch. 38, par. 16—1(a)(1)), and criminal damage to property in excess of $300 (Ill. Rev. Stat. 1981, ch. 38, par. 21—1(a)), all arising out of an occurrence on January 1, 1983. The defendant was subsequently

sentenced to a four-year term of imprisonment for the residential burglary offense only. The State also filed a petition for revocation of defendant's probation based upon the January 1, 1983, incident to which the defendant later stipulated that he had been convicted of the three offenses. His probation was revoked and he was sentenced to a 40-month term of imprisonment to be served consecutively with the previously imposed four-year imprisonment term for residential burglary.

These two cases have been consolidated on appeal and the following issues are raised by defendant: (1) did the trial court commit reversible error in the residential burglary trial (a) by limiting his opportunity to impeach an alleged accomplice witness, (b) by repeatedly making unnecessary comments disparaging to defense counsel before the jury, and (c) in admitting certain physical evidence based on hearsay and an inadequate foundation; and (2) was the 40-month consecutive term of imprisonment following revocation of his probation (a) grossly disparate to that of a codefendant, and (b) improper because the trial court specifically found defendant was unlikely to commit another crime? Defendant also requests that if his conviction for residential burglary is reversed and remanded for a new trial, his probation revocation and sentence be reversed.

Defendant and Daniel T. Veenendaal were both charged, convicted, and placed on probation for the offense of unlawful delivery of a controlled substance occurring on June 29, 1982. Both defendant and Veenendaal were subsequently charged with residential burglary and related charges arising out of an entry into the home of Jack W. McGregor on January 1, 1983. Petitions to revoke their probation were also filed. The residential burglary offense proceeded to a jury trial against defendant solely. At trial the State's evidence essentially was that the McGregor home was broken into in the late evening of December 31, 1982, and early hours of January 1, 1983; that various valuable items were taken and damage caused; that Veenendaal, who had previously pleaded guilty and was sentenced to a four-year term of imprisonment, testified he and defendant committed the burglary and his nephew, David Curpier, a minor, assisted as a lookout; that David Curpier testified he acted as a lookout while his uncle and defendant went to the McGregor home, which was next to his, and removed various items; and that defendant gave several oral statements to sheriff's detective Chris Pandre in which he admitted being a lookout, admitted helping Veenendaal and Curpier, who he said committed the burglary, carry out various items from the McGregor home, and admitted he was going to get some of the money from the sale of

these stolen items.

Defendant's father and mother testified that defendant was home with them all evening; they went to bed about 2:30 a.m. George Punzio, who dropped off his small daughter at the Merz home that evening, testified defendant was home at 7 p.m. when he arrived and at 2:15 a.m. when he again arrived to pick up his daughter. Defendant did not testify.

Following the defendant's conviction and four-year sentence of imprisonment for residential burglary, he stipulated to the guilty verdicts in connection with this burglary in the revocation of probation proceedings in his previous conviction for unlawful delivery of a controlled substance. His probation was revoked and he was sentenced to a 40-month term of imprisonment to be served consecutive to the residential burglary sentence. Veenendaal, who was a codefendant in both the unlawful delivery of a controlled substance case and the residential burglary case, had entered a negotiated plea of guilty to residential burglary and an admission to the probation violation prior to defendant's trial. Pursuant to the plea agreement he was sentenced to a four-year term of imprisonment for residential burglary and his probation was revoked although no sentence was entered. He was further granted immunity from prosecution in relation to several other burglaries which he admitted committing.

Relating to the residential burglary case, defendant raises three arguments in which he contends he was deprived of a fair trial. His post-trial motion for a new trial failed to specifically raise any of these arguments. To preserve an issue for appeal, an objection must be raised at trial and in a post-trial motion. (*People v. Jackson* (1981), 84 Ill. 2d 350, 358-59, 418 N.E.2d 739.) An exception to the waiver rule is where there has been "plain error," and the doctrine of plain error may be invoked in criminal cases where the evidence is closely balanced or where the error was of such magnitude that the accused was denied a fair trial. (*People v. Lucas* (1981), 88 Ill. 2d 245, 250-51, 430 N.E.2d 1091.) Pursuant to this principle we examine defendant's appellate contentions.

First, defendant maintains that the trial court prohibited him from cross-examining the State's witness, David Curpier, concerning juvenile arrests which had not resulted in court action. He argues that such evidence was admissible to show the witness was biased because of an expectation of leniency. The context in which this issue arose was on motion of the State prior to the beginning of trial. The prosecutor sought to preclude defendant from examining Curpier, who was 14 years of age, about prior arrests resulting in station adjustments

without court action. It was acknowledged by the State that Curpier could be examined about two juvenile cases in which court adjudications and supervision had resulted. Subsequently, at trial, the two juvenile adjudications for which he was on supervision, which included the theft from the McGregor home, were extensively inquired into by the defendant, especially as it related to any possible "deal" with the State and any expectation of leniency. As to the other arrests and station adjustments, the record only reveals generally that there were several in 1981, and several in 1982 close to the date of the residential burglary on January 1, 1983, none of which resulted in court action or any supervision, just that the minor was "talked to." Apparently the trial court denied admission of this evidence because it was not the equivalent of a conviction of guilty.

We would agree with the defendant that the trial court appeared to bar these prior arrests and station adjustments of the witness on the basis that they did not result in the equivalent of adult convictions. Under the facts here, any impeachment of the witness' general credibility based on these past unadjudicated delinquencies would be improper. (See Ill. Rev. Stat. 1981, ch. 37, par. 702—9; *People v. Harrell* (1983), 112 Ill. App. 3d 241, 445 N.E.2d 496.) However, defendant maintains that this evidence was admissible as impeachment to show motive, bias, or interest which is not directed at discrediting the witness by showing that he has been charged with a crime, but its purpose is to demonstrate the testimony is biased because of an expectation of leniency. (See *People v. Foley* (1982), 109 Ill. App. 3d 1010, 441 N.E.2d 655; *People v. Kellas* (1979), 72 Ill. App. 3d 445, 389 N.E.2d 1382.) While the trial court did not directly address this argument, we do so, and we may affirm the trial court when correct for any reason appearing in the record and even though its decision may be based on improper reasoning. *People v. Sylvester* (1980), 86 Ill. App. 3d 186, 193, 407 N.E.2d 1002.

The confrontation clause of the sixth amendment of the United States Constitution (U.S. Const., amend. VI) guarantees the defendant the right to cross-examine a witness against him for, among other reasons, the purpose of showing the witness' bias, interest or motive to testify falsely. (*Davis v. Alaska* (1974), 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105.) Although the scope of cross-examination is generally within the trial court's discretion (*People v. Barr* (1972), 51 Ill. 2d 50, 51-52, 280 N.E.2d 708), the widest latitude should be afforded a defendant to show bias and to develop matters that would reasonably show the bias, motive or willingness of the State's witnesses to testify. (*People v. Wilkerson* (1981), 87 Ill. 2d 151, 156, 429 N.E.2d

526.) This is especially true where the witness is an accomplice, and the fact that the witness is a minor does not operate to restrict the permissible scope of cross-examination necessary to develop any matters which tend to impeach his fairness or impartiality. (*People v. Norwood* (1973), 54 Ill. 2d 253, 296 N.E.2d 852.) It has been held that this type of impeachment is not dependent on whether defense counsel can prove beforehand that promises of lenience had been made or any expectations of special favor existed in the witness' mind. *People v. Foley* (1982), 109 Ill. App. 3d 1010, 1015, 441 N.E.2d 655.

The question before us here is whether evidence of juvenile arrests and station adjustments of a witness not resulting in supervision, occurring prior, although some were close in time, to the commission of the offense and trial of the defendant should have been admissible for the purpose of offering a motive for the witness to testify falsely. Defendant maintains such evidence barred him from showing that the witness' testimony was influenced by an expectation that his testimony would be helpful in keeping these prior arrests from requiring court action. In determining this question we must operate from the facts in the record before us.

■ The juvenile witness was neither on any supervision or probation resulting from these station adjustments (See *Davis v. Alaska* (1974), 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105), nor were any proceedings pending arising out of these arrests (see *People v. Wilkerson* (1981), 87 Ill. 2d 151, 429 N.E.2d 526). The trial court did allow evidence of Curpier's admission in juvenile court proceedings to theft and dismissal of other allegations in the McGregor break-in, and his admission to another unrelated offense, for which he was under supervision at the time he testified. However, we believe that under the circumstances here where the juvenile witness was arrested for several offense and "talked to" as part of a station adjustment procedure without any formal proceedings or supervision resulting therefrom, all occurring prior to the date of defendant's alleged crime and trial, the evidence sought to be introduced to show bias, interest or motive was too remote, uncertain, and speculative to be admissible for impeachment purposes. Defendant must at least present direct evidence, rather than uncertain or remote evidence, that such bias exists. *People v. Richard* (1980), 90 Ill. App. 3d 322, 330-31, 413 N.E.2d 5.

While defendant speculates in his appellate brief that the witness' testimony might have been influenced by an expectation that his testimony would be helpful in keeping these arrests from "requiring court action," there was no evidence offered below by defendant that the

witness could be subject to juvenile proceedings after a station adjustment is made. The record does not disclose what procedures are used in McHenry County in station adjustments as they may pertain to any informal agreement with the prosecutor to forego permanently any commencement of proceedings under the Juvenile Court Act. Nor does the record indicate the nature of these arrests which could, for example, be for such typically juvenile-related violations as curfew or truancy. Under all the circumstances here, we find no error in the trial court's limitation of cross-examination.

■ The second issue raised in this case is whether certain of the trial court's comments, characterized by defendant as frequent and unnecessary, were disparaging toward his counsel so as to deprive defendant of a fair trial. In his appellate brief defendant sets out some 14 instances in the record which he asserts illustrate the trial court's demeaning attitude toward his trial counsel. Generally, the complained-of comments made in the presence of the jury relate to cautioning defendant's counsel not to interrupt either a witness, the prosecutor or the court, and advising counsel he was being repetitious, inquiring into improper evidence, or untimely in an objection. Two remarks of the court appear to be made in a humorous vein and are in response to defense counsel's prior comment or questions. We need not reproduce all these complained-of comments. Nonetheless, we have thoroughly reviewed them all in the context in which they appear in this trial.

Every defendant, regardless of the nature of the proof against him or her, is entitled to a trial that is free from improper and prejudicial comments on the part of the trial judge. (*People v. Heidorn* (1983), 114 Ill. App. 3d 933, 936, 449 N.E.2d 568.) Jurors are quick to perceive any leaning of the judge and place great reliance upon what he says and does, so that his statements and intimations are liable to have the force of evidence and be most damaging to an accused. (*People v. Lewerenz* (1962), 24 Ill. 2d 295, 301, 181 N.E.2d 99.) Hostile conduct by the court toward an accused's counsel is a factor which may well tend to influence a jury to the prejudice of an accused. *People v. Marino* (1953), 414 Ill. 445, 451, 111 N.E.2d 534.

It does appear in this record that defendant's counsel did frequently interrupt the court, a witness, and the prosecutor. Counsel was cautioned about this once at some length outside the presence of the jury, and also admonished on numerous other occasions during the course of the trial. It also appears that defense counsel had a habit of interrupting, and the admonitions of the court in response were not unduly harsh. Under these circumstances, we find no error. Other

complained-of comments of the trial judge were directed to instances where defense counsel asked repetitious or improper questions and was cautioned, for example, as follows: "Let's go on to another question, Sir"; "[S]ir, let' keep it within the proper bounds"; and "[Y]ou are repeating yourself. Let's not do that." Again, in the context in which these comments were made, they were neither prejudicial to defendant nor demeaning to defense counsel. We also observe that on several occasions the trial court cautioned the prosecutor when she exceeded the bounds of proper questioning.

■ Defendant also maintains that in two instances the trial judge, by attempting to turn defense counsel's statements into the object of judicial humor, imparted to the jury the message that defense counsel should not be taken too seriously. When defense counsel asked permission to approach the court reporter to have an exhibit marked, the trial court responded:

"THE COURT: You will be granted permission to approach from now to the end of this trial.

MR. MECZYK: Thank you, Judge.

THE COURT: And thereafter if she permits.

MR. MECZYK: Thank you."

The other complained of comment occurred just before defense counsel called his last witness, and stated, "It will be very brief, Judge." The court remarked, "Are you promising, Sir?"

Attempts at judicial humor by a judge during a trial are ill-advised and inappropriate to the performance of judicial duties. (*People v. Bernatowicz* (1952), 413 Ill. 181, 188, 108 N.E.2d 479.) As stated, in pertinent part, in the ABA Standards, Function of the Trial Judge sec. 6.4 (1972), "[t]he trial judge should be the exemplar of dignity and impartiality. He should exercise restraint over his conduct and utterances. He should suppress his personal predilections, and control his temper and emotions." Similarly, Supreme Court Rule 61 (87 Ill. 2d R. 61) is instructive on the proper conduct of a judge. Here, we conclude the above-quoted comments of the trial judge were improper, but were fairly innocuous and not of such a nature to be prejudicial so as to deny defendant a fair trial.

■ One last instance of alleged improper judicial conduct occurred when the judge responded during cross-examination of the State's witness, Dan Veenendaal, "He [Veenendaal] said close to midnight, and ten o'clock could be close to midnight." It is contended by defendant that the court expressed its opinion on the facts. We believe this comment by the court was improper as it tended to indicate an opinion on the witness' testimony. Nevertheless, in the context in

which the comment was made there is nothing particularly damaging to the defendant. Even where the court's method of ruling on an objection does indicate an opinion as to the validity of a party's position, the context of the judge's remark may be such that there is no prejudice. (*People v. Heidorn* (1983), 114 Ill. App. 3d 933, 938, 449 N.E.2d 568.) We also feel compelled to point out that apparently trial counsel did not feel the judge's comments throughout the trial were disparaging to him since he made no such contention in the post-trial motion for a new trial. Any error in the court's remarks did not deprive defendant of a fair trial.

■ The last contention of error in the residential burglary case is that certain Newport-brand cigarette butts found in the McGregor home by Mr. McGregor were improperly admitted into evidence because the foundation for that evidence was McGregor's hearsay statement that he found them. McGregor did not testify. Detective Pandre did testify that he had asked McGregor to check the home for things that did not belong to him, and McGregor pointed out some items the next day. An objection to this testimony was withdrawn. Later the court struck testimony of what McGregor said he found. Pandre then stated that he recovered two cigarette butts at the McGregor home. However, defense counsel himself later elicited on cross-examination evidence that McGregor turned over to Pandre the cigarette butts. If an accused procures, invites or acquiesces in the admission of evidence, even though it may be improper, he cannot then complain on appeal. (*People v. Payne* (1983), 98 Ill. 2d 45, 49-51, 456 N.E.2d 44; *People v. Burage* (1961), 23 Ill. 2d 280, 282-83, 178 N.E.2d 389; *People v. Harris* (1982), 104 Ill. App. 3d 833, 839, 433 N.E.2d 343; *People v. Patterson* (1980), 90 Ill. App. 3d 775, 783-84, 413 N.E.2d 1371. Furthermore, the State's evidence also established through Veenendaal that defendant had smoked Newport cigarettes that evening, and through Detective Pandre that defendant orally admitted to him that the cigarette butts found in the McGregor home were his. For these reasons, we find no error in admission of this evidence.

Accordingly, the judgment of conviction for residential burglary is affirmed.

■ We turn now to defendant's other case on appeal which stems from the revocation of his probation for the offense of unlawful delivery of a controlled substance which resulted in a 40-month sentence of imprisonment to be served consecutively with the four-year term of imprisonment for residential burglary. Defendant alleges error in the imposition of the consecutive sentence where, he contends, the trial court found defendant was unlikely to commit another crime.

"The court shall not impose a consecutive sentence unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record." (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—4(b).) Although it is the better practice for the trial court to state the opinion that a consecutive term is necessary for the protection of the public, failure to do so does not necessarily require reversal. (*People v. Pittman* (1982), 93 Ill. 2d 169, 177-78, 442 N.E.2d 836.) "What is required is that the record show that the sentencing court is of the opinion that a consecutive term is necessary for the protection of the public." 93 Ill. 2d 169, 178, 442 N.E.2d 836.

In the case at bar, the trial judge in pronouncing his reasons for the sentence specifically found that "defendant's conduct was a result of circumstances unlikely to recur" and "defendant's character and attitude indicate he is unlikely to commit another crime." Nevertheless, the court went on to find certain other factors in aggravation of the sentence and imposed a consecutive sentence. When requested by defendant's counsel to reconsider the consecutive sentence, the court responded that it had considered making it concurrent, but did not because delivery of a controlled substance was a serious crime and "involves other persons."

We agree with the defendant that the express findings of the trial judge here are incompatible with the statutory requirement that the court be of the opinion that a consecutive sentence is necessary to protect the public from further criminal conduct by the defendant. Although the State argues that the court's statements were intended only to mean that defendant was unlikely to participate in another drug sale with Daniel Veenendaal, such a connotation is clearly not evident from the trial judge's express findings. Instead, it appears that the trial court believed the delivery of a controlled substance to be a serious crime for which a lengthy sentence was necessary. This may be a justification for a sentence greater than the minimum, but cannot be the basis for a consecutive sentence under the circumstances here where the trial judge specifically found defendant was unlikely to commit another crime and his conduct a result of circumstances unlikely to recur. We therefore vacate the consecutive sentence.

■ Defendant had advanced a second argument for vacation of the sentence, contending it was grossly disparate with that of his codefendant, Veenendaal, whose probation was revoked but no sentence

entered. At oral argument defendant's appellate counsel appeared to concede that this argument would not be valid if the consecutive sentence were vacated on the other basis argued above. Furthermore, the record does indicate that the disparity between the sentences was warranted by differences in the extent of the defendants' participation in the delivery of a controlled substance (See *People v. Godinez* (1982), 91 Ill. 2d 47, 55-56, 434 N.E.2d 1121), and in view of Veenendaal's negotiated plea to the residential burglary offense and probation violation and his cooperation in testifying for the State against defendant. (See *People v. Bergman* (1984), 121 Ill. App. 3d 100, 105-07, 458 N.E.2d 1370.) Accordingly, we modify the consecutive sentence to a concurrent sentence of 40-months' imprisonment. *People v. Griffin* (1982), 113 Ill. App. 3d 184, 194, 446 N.E.2d 1175.

For the foregoing reasons, the judgment of conviction for residential burglary is affirmed, and the judgment of conviction for unlawful delivery of a controlled substance is affirmed as modified.

No. 83—685; affirmed.
No. 83—805; affirmed as modified.

VAN DEUSEN and HOPF, JJ., concur.